UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SFR SERVICES, LLC,
    Plaintiff,

v.                                                Case No.:     2:22-cv-505-JLB-NPM

AMERICAN COASTAL
INSURANCE COMPANY,
    Defendant.
_____

## **ORDER**

SFR Services, LLC ("SFR") sues American Coastal Insurance Company ("ACIC") for breach of an insurance policy (the "Policy") based on ACIC's failure to provide coverage and remit payment for damage sustained by Steamboat Bend Condominium Association, Inc. ("Steamboat Bend") during Hurricane Irma. (Doc. 53 at ¶¶ 5, 6, 9, 13–15). The Court granted SFR's leave to amend the Complaint to include the July 2022 Assignment of Benefits ("AOB") (Doc. 52). In light of the newly filed Amended Complaint (Doc. 53), the Court denied ACIC's Motion for Summary Judgment (Doc. 54) as moot.

ACIC moves again for summary judgment on all counts of the Amended Complaint, arguing that (1) SFR's failure to fulfill its post-loss obligations was prejudicial to ACIC (Doc. 59 at 11–20); (2) Grant Renne, P.E.'s expert report fails to establish a genuine issue of material fact as to prejudice (*id.* at 20–21); (3) the claim was not reported within the three-year statutory requirement under Florida law (*id.* at 21–22); (4) the 2022 AOB is invalid and unenforceable (*id.* at 22–24), and (5) the Court lacks subject matter jurisdiction (*id.* at 24–25). SFR filed a response (Doc.

1

65), and ACIC replied (Doc. 73).  Also before the Court, and related to the disposition of the motion for summary judgment, is ACIC's *Daubert* Motion to exclude the expert testimony of Mr. Renne.[1]  (Doc. 58).  SFR filed a response in opposition.  (Doc. 70).

## BACKGROUND

This case is a dispute over ACIC's denial of coverage after Steamboat Bend sustained property damage during Hurricane Irma.  SFR is the assignee of Steamboat Bend's rights under the Policy.  (Doc. 59-26 at 1–3).  The Policy's post-loss obligations include: "prompt notice of the loss or damage," permittance to examine and "make copies from your books and records," and examinations under oath ("EUOs") if requested.  (Doc. 59-2 at 16–17).  The Policy provides that ACIC has "no duty to provide coverage . . . if the failure to comply with the . . . duties is prejudicial to [ACIC]."  (*Id.* at 16).

About six months after Hurricane Irma, Steamboat Bend submitted a claim to ACIC for damages sustained to the carport structures, which was denied. (Doc. 59-4; Doc. 59-5).  Almost 2.5 years later, a supplemental claim was filed for Hurricane Irma damage sustained by all the buildings.  (Doc. 59-6).

About six months after ACIC requested certain documents and after multiple follow-up requests, those documents were made available for copying.  (Doc. 59-7; Doc. 59-11; Doc. 59-8 at 34, 51, 54–55).  ACIC also invoked its right under the Policy

---

[1] The motion for summary judgment argues that SFR is unable to rebut the presumption of prejudice with Mr. Renne's report because it is "based on insufficient facts and data . . . ."  (Doc. 59 at 20).

2

to take EUOs of certain individuals. (Doc. 59-17). ACIC ultimately denied coverage because SFR's failure to comply with its post-loss obligations prejudiced its ability to investigate the claim. (Doc. 59-20).

Mr. Renne conducted a virtual inspection assisted by Mr. Saint-Hilaire, a certified roofing inspector who was on-site during the inspection. (Doc. 58-6 at 30, 32). Mr. Renne's methodology complied with standard practices and used data from the National Oceanic and Atmospheric Administration (NOAA) and the National Weather Service (NWS). (Doc. 58-2 at 1, 3; Doc. 58-6 at 24). Mr. Renne testified that he excluded from his analysis areas of prior repairs and areas of prior destructive testing. (Doc. 58-6 at 52–55, 69–70). Mr. Renne's report ultimately concluded that Hurricane Irma caused the damage. (Doc. 58-2 at 18).

## LEGAL STANDARDS

### I.  *Daubert* Motion

Opinion testimony by a "qualified" expert may be provided if the proponent of the expert demonstrates that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (emphasis omitted)

(quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993)). The objective is to "ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The "burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) (quotation omitted). A district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993) (citations omitted).

## II.  Summary Judgment

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets that standard, the burden shifts to the non-movant to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotation marks omitted).

Disputes are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Facts are material if they may "affect the outcome of the suit under the governing law." *Id.* The Court's function is not to "weigh the evidence

and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

## DISCUSSION

### I. The *Daubert* Motion.

Mr. Renne has been a Registered Professional Engineer since 1990, completed over 6,000 property damage investigations throughout his career, and participated in over 400 cases. (*See* Doc. 44-2). The Court finds that he is qualified to provide an expert opinion on this matter. In fact, the *Daubert* Motion challenges only the reliability of Mr. Renne's conclusions and whether his opinion is predicated upon sufficient facts and data. (Doc. 58).

When ascertaining the reliability of an expert's opinion, courts consider, amongst other things: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citation omitted).

The Eleventh Circuit has established that "[a] district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury." *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) (internal quotation marks omitted). Instead, "shaky but admissible evidence" should be attacked via "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. However, district

5

courts may exclude an expert when "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Mr. Renne's report states that his methodology is "based on ASTM E2713-18 (Standard Guide to Forensic Engineering), ASTM E1188-11 (Standard Practice for the Collection and Preservation of Information and Physical Items by a Technical Investigator), and E620-18 (Standard Practice for Reporting Opinions of Scientific or Technical Experts)." (Doc. 58-2 at 1). Mr. Renne prepared his report through "visual inspection of readily observable surfaces, collection of digital evidence, and rotation of roof tiles to determine attachment integrity." (*Id.*) Mr. Renne's conclusion that Hurricane Irma caused the damage is based on his review of the buildings, velocity pressure calculations based on the American Society of Civil Engineers (ASCE) 7-10 formula, and historic NOAA weather data. (*Id.* at 1, 3, 18).

ACIC argues that the report should be excluded because Mr. Renne's inspection was done virtually and that Mr. Saint-Hilaire, the certified roofing inspector who was on-site during the inspection, does not possess the necessary qualifications. (Doc. 58 at 14; Doc. 58-6 at 30, 32). ACIC also argues that Mr. Renne's report is based on insufficient facts and data because he did not interview unit owners and residents or review repair records related to the property, in contravention of the ASCE, ASTM, and his own report. (Doc. 58 at 13–14). ACIC's final argument in favor of exclusion is that, because destructive testing was already done prior to Mr. Renne's inspection, Mr. Renne's conclusions are unreliable. (*Id.* at

15–16). SFR responds by asserting, amongst other things, that ACIC's issues with Mr. Renne's testimony and report go to credibility rather than reliability and, thus, should be properly addressed during cross-examination. (Doc. 70 at 7).

At the onset, the Court rejects ACIC's arguments regarding the virtual nature of the inspection and the destructive testing. An expert's reliance on virtual evidence does not inherently bar his testimony. *Derose v. Scottsdale Ins. Co.*, No. 1:22-CV-20784-KMM, 2022 WL 19829368, at *2 (S.D. Fla. Nov. 15, 2022) ("As such, the Court does not fault Mr. Renne for several of Defendant's proposed challenges, including his not personally visiting the Property."). Also, Mr. Saint-Hilaire possessed the technical qualifications required to participate in the on-site investigation. (Doc. 70 at 20) ("Mr. Durand Saint-Hilaire [is] a HAAG certified roofing inspector who has participated in thousands of roofing inspections . . . and acted at Mr. Renne's direction according to Florida Administrative Code 61G15-18.011."); (Doc. 58-6 at 31–32). Additionally, Mr. Renne testified that he never performed destructive testing, as the ASTM does not allow for destructive testing because the investigation cannot be repeated, tested, or verified. (Doc. 58-6 at 55). Just because destructive testing was performed prior to Mr. Renne's investigation does not render his investigation itself unreliable.

Regarding Mr. Renne's failure to interview involved parties, ASCE 30-14 states that "[w]henever possible, use the initial site visit as an opportunity to interview the client, building management, building maintenance personnel, and any other involved parties . . . ." (Doc. 58-9 at 30). Neither Mr. Renne nor Mr.

7

Saint-Hilaire interviewed residents, homeowners, or the property manager. (Doc. 58-6 at 53–54). The Court rejects ACIC's argument that Mr. Renne's failure to interview these involved parties makes his report unreliable. ASCE 30-14 states that it only needs to be done "whenever possible," not in all circumstances. However, the Court recognizes that Mr. Renne's report is somewhat confusing, as he states "[t]he following list of standard practices [were] performed" and then lists that "an interview with the property owner may be conducted either on site or via telephone." (Doc. 58-2 at 3). Thus, any discrepancies between Mr. Renne's report and testimony should be addressed on cross-examination at trial. It goes to his credibility, not the admissibility of his testimony.

ACIC cites to other cases where Mr. Renne's opinions were excluded to support its argument that the report was based on insufficient facts and data. (Doc. 58 at 11–13). Yet, the Court finds these cases distinguishable. In *Derose*, the court excluded Mr. Renne's testimony because he failed to falsify his hypothesis by not considering Tropical Storm Eta as an alternative cause of damage. *Derose*, 2022 WL 19829368, at *3. Similarly, in *Salgado v. Lexington Ins. Co.*, No. 1:22-CV-23460-KMW, 2023 WL 9681244, at *3 (S.D. Fla. Sept. 22, 2023), the court found Mr. Renne's report unreliable because he did not consider other storm events as alternative causes of damage or the prior repairs in his analysis. Here, Mr. Renne's report considered "historic NOAA weather data [to] support the opinion that the reported date of loss is the single storm event that caused [the damage]." (Doc. 59-

21 at 18). And there is no indication —nor does ACIC argue—that another storm posed an alternative cause of damage.

Likewise, *Perez v. Citizens Prop. Ins. Corp.*, 343 So. 3d 140, 143 (Fla. 3d DCA 2022), *Garcia v. Scottsdale Ins. Co.*, No. 1:21-CV-20274, 2022 WL 4594121, at *5 (S.D. Fla. Aug. 18, 2022), and *SFR Services, L.L.C. v. American Coastal Ins. Co.,* No. 2021-CA-971 (Fla. 12th Cir. Ct. Feb. 9, 2024) are not instructive as to the reliability standard set out in *Daubert* because they found Mr. Renne's reports insufficient to rebut the presumptions of prejudice in the context of a summary judgment motion.

At the crux of ACIC's issue with Mr. Renne's report is his failure to review repair records from repairs made by Steamboat Bend, despite his review of repair documents related to repairs made by SFR. (Doc. 58 at 6–7). ACIC also argues that Mr. Renne should not have excluded the areas of repair and deemed it contaminated evidence "unworthy of consideration in the formulation of his opinion." (*Id.* at 6–7). Mr. Renne testified that he relied on ASCE 30-14. (Doc. 58-6 at 24). ASCE 30-14 requires inspectors to "obtain and analyze any written documentation for alterations and repairs . . . ." (Doc. 58-9 at 32). Mr. Renne's report details that "areas of pre-loss repairs and/or post-loss mitigation [were] reviewed . . . ." (Doc. 59-21 at 4). Indeed, Mr. Renne testified that he reviewed SFR's repair records and visually reviewed repairs during his investigation. (Doc. 59-22 at 51–52).

The Court concludes that, although Mr. Renne's review of the repairs was less than thorough, that alone does not garner exclusion of his report as there was

9

"adequate evidence that had not been repaired for [him] to formulate [his] opinion . . . ." (Doc. 58-6 at 71).

Mr. Renne's report is not the model for clarity, yet "experts and their opinions need not be perfect to be admissible." *Tall v. Fed. Ins. Co.*, Case No. 6:20-cv-1125-RBD-LRH, 2021 WL 7629423, at *3 (M.D. Fla. May 5, 2021) (citing *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341) ("Defendant may quibble with the application of Renne's methods, but he used standard engineering formulas to come to his conclusion that the wind velocity pressure was enough to damage the roof."). "Where evidence is admissible but shaky, as it is here, the Eleventh Circuit has found that the appropriate means of attack are 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . .'" *Ballew v. StandardAero Bus. Aviation Servs., LLC*, No. 2:21-CV-747-JLB-NPM, 2024 WL 245803, at *8 (M.D. Fla. Jan. 23, 2024) (quoting *Quiet Tech CD-8, Inc.*, 326 F.3d at 1345). Mr. Renne's application of his methodology is not so unreliable that the Court should exclude it out of hand. ACIC's issues with Mr. Renne's report can be used during cross-examination to potentially decrease the weight and credibility the jury gives to his opinion.

Thus, the Court denies the *Daubert* Motion without prejudice. ACIC may renew the motion as a motion in limine closer to trial.

## II. The Summary Judgment Motion.

ACIC argues (1) the failure to comply with the Policy's post-loss obligations was prejudicial to ACIC (Doc. 59 at 11–20), (2) Renne's expert report fails to rebut

the presumption of prejudice because it is based on insufficient facts and data (*id.* at 20–21), (3) the claim was not reported within the three-year statutory requirement under Florida law (*id.* at 21–22), (4) the 2022 AOB is invalid and unenforceable (*id.* at 22–24), and (5) subject matter jurisdiction is lacking (*id.* at 24–25).

To establish a coverage defense predicated on an insured's failure to comply with post-loss obligations, the insurer must first establish that the insured materially breached a post-loss obligation. *Am. Integrity Ins. Co. v. Estrada*, 276 So. 3d 905, 912 (Fla. 3d DCA 2019). Then, the burden shifts to the insured to prove that the breach did not prejudice the insurer. *Id.* If an "insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury." *Himmel v. Avatar Prop. & Cas. Ins. Co.*, 257 So. 3d 488, 492 (Fla. 4th DCA 2018) (internal quotation marks omitted).

The Policy states that the insurer can deny coverage if the insured's failure to do the following is prejudicial to the insurer: provide "prompt notice of the loss or damage," allow the insurer to examine and "make copies [of the insured's] books and records," and comply with examinations under oath. (Doc. 59-2 at 16–17). ACIC argues that SFR's failure to comply with those post-loss obligations was prejudicial to them. (Doc. 59 at 11–21). SFR argues that they have rebutted the presumption of prejudice and that a genuine issue of material fact exists that precludes summary judgment. (Doc. 65 at 8–24).

ACIC's motion for summary judgment is due to be denied because SFR has rebutted the presumption of prejudice with Mr. Renne's report.  Therefore, ACIC is not entitled to summary judgment.

### A. SFR's Efforts to Schedule the EUOs Preclude Summary Judgment.

SFR's counsel contacted ACIC's counsel with dates to schedule some of the EUOs and further followed up after receiving no response.  (Doc. 45-8 at 8–9).  ACIC's counsel replied by asking to schedule a call to discuss the EUOs, but canceled the call on the day it was scheduled and rescheduled for a later date.  (*Id.* at 1–3).  Summary judgment is precluded because the record shows that SFR cooperated to some degree in the scheduling of the EUOs.  *Himmel*, 257 So. 3d at 492 (finding summary judgment precluded because a fact question existed when there was record evidence that the insured made efforts to reschedule the EUOs and "cooperated to some degree").

### B. The Receipt of Copies of Certain Requested Books and Records Precludes Summary Judgment.

An insured must provide its records to afford "the insurer . . . a reasonable opportunity to investigate and adjust the claim." *Citizens Prop. Ins. Corp. v. Galeria Villas Condo. Ass'n, Inc.,* 48 So. 3d 188, 191 (Fla. 3d DCA 2010).  The Policy requires insureds to allow the insurer to examine and make copies of their books and records. (Doc. 59-2 at 16).  About six months after ACIC requested certain documents and after multiple follow-up requests, ACIC was notified that the

requested documents were available for copying.  (Doc. 59-8 at 34, 51, 54–55).  ACIC argues that certain repair records were missing.  (Doc. 59 at 16).

Regardless, even if certain repair records were missing, and despite the six-month delay, summary judgment is precluded because the record demonstrates that SFR cooperated to some degree by allowing ACIC to examine and make copies of the requested records.  *Adelson v. Berkshire Life Ins. Co. of Am.*, No. 20-62692-CIV, 2022 WL 19404236, at *8 (S.D. Fla. Aug. 30, 2022) (finding a question of fact exists for the jury when the insured provided the majority of the requested documents and an explanation for the failure to produce others); *El Dorado Towers Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 717 F. Supp. 2d 1311, 1321 (S.D. Fla. 2010) (finding a question of fact existed when the insured produced certain requested documents years after the insurer's request because it constituted some degree of cooperation).

## C.    SFR did not provide prompt notice.

In Florida, prompt notice is given with reasonable dispatch and time considering all the surrounding facts and circumstances.  *PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 F. App'x 845, 848 (11th Cir. 2014).  Generally, whether notice was "prompt" is an issue of fact for the jury.  *Laquer v. Citizens Prop. Ins. Corp.*, 167 So. 3d 470, 474 (Fla. 3d DCA 2015).  However, summary judgment can be granted when "the factual record [does] not support an argument that the delay was reasonable."  *PDQ Coolidge Formad, LLC*, 566 F. App'x at 848 (concluding that notice was not prompt when the insured "knew about the damage to the Property and knew how to promptly notify [the insurer] about damage to

other properties but nevertheless failed to provide notice concerning the Property for approximately six months").

ACIC argues that SFR's notice 1,061 days after the sustained damage was not prompt and prejudiced ACIC. (Doc. 59 at 11–15). ACIC contends that notice should have been given sooner because Steamboat Bend was aware of the damage when it "incurred over $50,000 in roof repairs performed after Hurricane Irma and over two years before it reported its supplemental claim[]" (Doc. 59 at 14) (emphasis omitted), identified damage to the roofs by May 2018 (*id.* at 15), and identified damage to the soffits in December 2018 (*id.*).

In their response, SFR neither addresses the issue of prompt notice nor disputes that the claim was reopened almost three years *after* the claimed loss. The Court is unaware of any facts in the record that state otherwise.[2] Much like *PDQ Coolidge Formad, LLC,*, here SFR filed an initial claim about 2.5 years prior to the instant claim and knew about the roof damage because repairs were made in May 2018. *See PDQ Coolidge Formad, LLC*, 566 F. App'x at 849; (Doc. 59-18 at 4). The Court concludes that SFR's notice almost three years after Hurricane Irma was not prompt and, therefore, the question is now whether SFR's untimely notice prejudiced ACIC.

---

[2] It is not the Court's responsibility to seek out beneficial evidence that the parties may have neglected to mention. *See, e.g.*, *Chavez v. Sec'y, Fla., Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . ."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

"When notice of a possible claim is not given to an insurance company, prejudice is presumed . . . ." *Nat'l Gypsum Co. v. Travelers Indem. Co.*, 417 So. 2d 254, 256 (Fla. 1982). To overcome this presumption, the insured must demonstrate that the insurer could inspect the insured property in the same condition as it was in right after the loss. *SFR Servs., LLC v. Hartford Ins. Co. of the Midwest*, 609 F. Supp. 3d 1287, 1292 (S.D. Fla. 2022). "Whether the presumption of prejudice to the insurer has been overcome is ordinarily a question of fact, so, to grant summary judgment, the record must conclusively foreclose the insured's ability to overcome the presumption of prejudice." *Gulfpoint Constr. Co., Inc. v. Westfield Ins. Co.*, No. 23-12195, 2024 WL 1759288, at *5 (11th Cir. Apr. 24, 2024) (internal quotation marks omitted) (finding the record did not "conclusively foreclose" the insured's ability to overcome the presumption when the insured's expert could still formulate opinions, despite inspecting the property years later, and no other windstorm occurred that could have caused the same damage) (citing *Shapiro v. First Protective Ins. Co.*, 359 So. 3d 777, 782 (Fla. 4th DCA 2023)).

Like the expert in *Gulfpoint Constr. Co., Inc.*, Mr. Renne explained that ACIC was not prejudiced in its investigations of the claim because "the pattern of windstorm damage caused by Hurricane Irma" was "clearly evident upon our inspection, which was conducted in 2022." *See Gulfpoint Constr. Co., Inc.*, 2024 WL 1759288, at *5; (Doc. 59-21 at 18). Mr. Renne's report considered "historic NOAA weather data [to] support the opinion that the reported date of loss is the single storm event that caused the [damage]." (*Id.*). Thus, because the Court cannot

15

"conclusively foreclose" SFR's ability to overcome the presumption of prejudice, there is a genuine dispute of material fact regarding whether the delay of notice prejudiced ACIC.

### D. SFR's July 2022 AOB and Notice of the Intent to Initiate Litigation Does Not Constitute a Supplemental Claim.

The Policy, tracking section 627.70132, Florida Statutes,[3] provides that "[a] claim, supplemental claim, or reopened claim for loss or damage caused by windstorm or hurricane is barred unless notice . . . is given . . . within 3 years after the date the hurricane first made landfall in Florida or the windstorm caused the covered damage." (Doc. 59-2 at 17). ACIC argues that the July 2022 Notice of Intent to Initiate Litigation (Doc. 59-25) and July 2022 AOB (Doc. 59-26) constituted supplemental notice of the claim. (Doc. 59 at 21–22).

Section 627.70132 and the Policy's three-year notice period is specific to the notice of a *claim*, not a "written notice of intent to initiate litigation" as required under section 627.70152. ACIC was notified of the claim in August 2020 (*See* Doc. 59-6), less than three years after Hurricane Irma made landfall. The July 2022 Notice of Intent to Initiate Litigation and July 2022 AOB did not constitute notice of the claim itself but rather fulfilled the statutory requirements prior to filing suit

---

[3] Florida Statute Section 627.70132 has since been amended. Generally, "the applicable version of a statute is the version in effect at the time a cause of action accrues." *R.J. Reynolds Tobacco Co. v. Sheffield*, 266 So. 3d 1230, 1233 (Fla. 5th DCA 2019). A claim for breach of an insurance policy accrues "when coverage was alleged to have been erroneously denied." *Donovan v. Fla. Peninsula Ins. Co.*, 147 So. 3d 566, 567 (Fla. 4th DCA 2014). Coverage was denied on September 3, 2021 (Doc. 59-20); therefore, the pre-amendment version of the statute applies to this dispute.

16

under section 627.70152. Therefore, neither the Policy's three-year time period for notice nor section 627.70132 bars the claim, as ACIC was provided notice of the claim less than three years after the storm.

### E. The Cost Estimate is "Contained" Within the July 2022 AOB.

Section 627.7152 requires an AOB agreement to "[c]ontain a written, itemized, per-unit cost estimate of the services to be performed by the assignee." Fla. Stat. § 627.7152(2)(a)5. ACIC argues that the July 2022 AOB is invalid and unenforceable because of the more than two-year discrepancy between the AOB date and the date of the estimate, and this somehow means that the estimate was not "contained" in the July 2022 AOB. (Doc. 59 at 23–24).

ACIC misrepresents the holding in *JPJ Servs. LLC v. New Hampshire Ins. Co.*, No. 21-14329-CIV, 2022 WL 1908970, at *5 (S.D. Fla. June 3, 2022), where the court used the ordinary meaning of the term "contain" to mean that section 627.7152 "requires the cost estimate to be included within the assignment itself." There, the AOB agreement lacked any language referencing a cost estimate, instead stating that the AOB constituted the *entire* agreement. *Id.* The court found that the cost estimate prepared a day after the AOB was executed and sent as a separate document was not "contained" in the AOB. *Id.*; *see Kidwell Grp., LLC v. United Prop. & Cas. Ins. Co.*, 343 So. 3d 97, 98 (Fla. 4th DCA 2022) (finding that a cost estimate was not "contain[ed]" in an AOB agreement when the cost estimate was dated five days later and the AOB agreement did not include language incorporating the cost estimate); *see also Kidwell Grp., LLC v. SafePoint Ins. Co.*,

376 So. 3d 48, 50–51 (Fla. 4th DCA 2023) (finding that cost estimate was "contained" in an AOB agreement where both included the same date and the agreement had language that the cost estimate was "fully incorporated herein").[4]

ACIC and SFR fail to cite any additional case law to support the proposition that an earlier-dated cost estimate can or cannot be "contained" within an AOB agreement. The July 2022 Notice of Intent to Initiate Litigation, July 2022 AOB, and cost estimate are all within the same document. (Doc. 59-25). The AOB includes page numbers in the bottom right-hand corner, further evidencing that the cost estimate was incorporated into the agreement. (Doc. 59-26). The fact that the cost estimate was prepared two years *prior* to the AOB does not mean that it cannot now be "contained" within the July 2022 AOB. Therefore, the Court rejects ACIC's argument and finds that the AOB is valid and enforceable.

F.  **Subject-Matter Jurisdiction Exists.**

ACIC argues that the Court lacks subject-matter jurisdiction over the claims because the Amended Complaint "ambiguously alleges that it has a member who is a citizen and resident of Puerto Rico" and "does not definitively state that Ricky McGraw is the sole member." (Doc. 59 at 25). ACIC provides McGraw's Florida voter registration and Santa Rosa County Property Appraiser records for a property owned by Angelle R. and Ricky L. McGraw in Florida. (Doc. 59-29; Doc. 59-30). ACIC also cites to McGraw's deposition testimony, where McGraw affirmed that

---

[4] Florida Courts mentioning the incorporation language of a cost estimate in an AOB agreement—a requirement not found in section 627.7152—does not require language for a cost estimate to be considered "contained" in the AOB agreement.

18

SFR was a "Florida domicile company" that operated solely in Florida. (Doc. 59-27 at 21–22).

Under Federal Rule of Civil Procedure 12(b)(1), claims must be dismissed when subject-matter jurisdiction is lacking. Plaintiffs must prove by a preponderance of the evidence that subject-matter jurisdiction exists. *Hogan v. Kerry*, 208 F. Supp. 3d 1288, 1289 (S.D. Fla. 2016). District courts have original jurisdiction over claims where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332. SFR invokes diversity jurisdiction, alleging that ACIC is a citizen of Florida, and SFR is a citizen of Puerto Rico, based on McGraw's citizenship (SFR's sole member). (Doc. 53 at ¶¶ 2–4); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017) ("[A] limited liability company (LLC) is a citizen of every state that any member is a citizen of."). Citizenship is the equivalent of "domicile" for diversity jurisdiction and means "the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom . . . ." *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002) (internal quotation marks omitted) (finding plaintiff was domiciled in the state where he was the majority owner of a business, owned real estate, held a driver's license, was registered to vote, and paid income taxes—despite owning real property in other states and his physician being in another state).

The Amended Complaint is not ambiguous; it clearly states that SFR "has one member, Ricky McGraw, a citizen and resident of Puerto Rico." (Doc. 53 at ¶ 3).

McGraw testified that he is the sole member of SFR, a citizen of Puerto Rico, and provided copies of his Puerto Rico driver's license and voter identification card. (Doc. 45-2). The Court is satisfied that SFR has met its burden of proving by a preponderance of the evidence that the parties are diverse. Therefore, the Court rejects ACIC's assertion that it lacks subject matter jurisdiction.

## CONCLUSION

Given the Court's careful review of the record and legal arguments presented, ***the Court strongly suggests*** that the parties re-engage in settlement negotiations. Should the parties represent in good faith that they are amendable to a settlement, the Court would consider, within 14 days of this Order, a joint motion requesting a Magistrate Judge to conduct a settlement conference at no expense to the parties. In all events, for the reasons set forth above:

1. Defendant's Motion for Summary Judgment (Doc. 59) is **DENIED**.

2. Defendant's *Daubert* Motion (Doc. 58) is **DENIED without prejudice** to be raised in a motion in limine at the appropriate time in accordance with the dates set forth in the Court's Fifth Amended Case Management and Scheduling Order (Doc. 63).

**ORDERED** in Fort Myers, Florida on February 7, 2025.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE